IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-30041 |
| | ) | |
| LARRY W. NORWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on reconsideration of the Text Order entered September 26, 2006, adopting United States Magistrate Judge Byron G. Cudmore's Report and Recommendation (d/e 14) to deny Norwood's Motion to Suppress Evidence (d/e 10)(Motion).  The Court allowed Defendant Norwood's request to reconsider adoption of the Report and Recommendation.  <u>Minute Entry of proceedings held on December 28, 2006</u>.  The Court further directed the Defendant to file any materials to support his objections to the Report and Recommendation.  <u>Minute Entry of proceedings held on December 28, 2006</u>.  Norwood submitted additional materials for the Court's consideration.  The Court now reviews the Report

and Recommendation de novo. 28 U.S.C. § 636(b)(1)(C). Upon de novo review of the proceedings before Judge Cudmore and the additional material submitted by Defendant Norwood, the Court overrules Norwood's objections and adopts Judge Cudmore's Report and Recommendation. The Motion to Suppress Evidence is denied.

## STATEMENT OF FACTS

On April 24, 2006, Illinois State Police Trooper Nathan Miller was stationed at mile marker 101. His vehicle was equipped with a video camera which was used to record his encounters with the public. The date and time of the events recorded were displayed in the lower left corner of the video. Miller also wore a wireless microphone to record his conversations. Miller could turn the microphone off when he did not want the audio recorded. Also, the microphone signal faded as Miller moved away from his vehicle. The times for events referenced in this Opinion are the times reflected on the video recording.

At about 4:48 p.m, on April 24, 2006, Miller observed Norwood driving a commercial tractor-trailer truck northbound on Interstate 55 near mile marker 101 in Sangamon County, Illinois. Miller saw no markings on the cab of the tractor, such as the name of the trucking company and the

2

other markings required by law and regulation. Norwood submitted photographs of the truck. The photographs show no markings on the door or hood of the tractor cab. The photographs, however, show markings on the sleeper compartment behind the cab. Transcript of Proceedings on August 21, 2006 (d/e 48) (Transcript), at 6-7; Documents in Support of Defendant's Motion to Suppress (d/e 34), Exhibit B, attached photographs.

Miller also observed that Norwood was following too closely to the vehicle in front of him. Transcript, at 7. Norwood testified before Judge Cudmore that he was not following too closely. Id., at 67. In his subsequent submissions to the Court, Norwood stated that Miller's marked Illinois State Police car was parked in the median about one-quarter to one-half mile away from another marked Illinois State Police car, also parked in the median. Norwood stated that the traffic slowed as the drivers saw the two marked cars parked so closely together in the median, and so, started following each other more closely. Letter from Larry Norwood filed January 25, 2007 (d/e 31), at 2.

After Norwood passed him, Miller pulled into the left lane and drove next to the cab of Norwood's truck and again saw no markings. He then initiated a traffic stop of Norwood. After Miller signaled Norwood to stop,

3

Norwood continued driving for about two more miles. Norwood then stopped on the side of the road at 4:51 p.m. Miller parked behind Norwood's truck. The video recording shows the back of the truck. Miller then walked toward the front of the truck. At 4:55 p.m. Miller and Norwood came back to Miller's vehicle. The two of them sat in Miller's vehicle while Miller conducted an inspection of Norwood's paperwork. Miller noted that Norwood seemed lethargic. Norwood said he appeared that way because he was diabetic and needed to eat something. Norwood states that he told Miller that he was diabetic and needed to eat something and take his medication. Transcript, at 68. Miller does not recall this, and the recording does not reflect this, although the recording did not pick up any conversations held at the front of Norwood's truck. Miller ultimately issued Norwood a warning ticket for following too closely, not having correct markings on his tractor, and other record keeping violations. See Letter from Larry Norwood filed January 31, 2007 (d/e 37), Warning Citation.

After stopping Norwood, Miller called in for a criminal background check on Norwood. While waiting for the background information, Miller also asked Norwood why the truck did not have the required identification.

Norwood explained that the truck had just gotten out of the body shop. Miller also asked Norwood if the trailer was a "refer", which means a refrigerated trailer designed to hold perishable items such as meat and produce. Norwood said yes.

The results of the background check came back at 5:00 p.m. The check revealed that Norwood had served time for conspiracy to distribute more than 100 kilograms of marijuana. At 5:01 p.m., Miller asked for permission to search the truck. Norwood consented. Miller and Norwood were still seated in Miller's vehicle at this time. Miller and Norwood then continued to have a conversation while Miller reviewed Norwood's paperwork and waited for backup. At 5:12 p.m., Miller thanked Norwood for giving consent for the search.

Miller waited for backup to arrive before conducting the search. While the two men were waiting in Miller's vehicle, Norwood told Miller at 5:16 p.m. that he did not have any bedding in the truck. There was a sleeper compartment attached to the cab of the tractor truck. Miller thanked him for that information and told Norwood that he would have noticed the absence of bedding when he searched. At 5:24 p.m., Miller asked Norwood if Norwood thought he would get stopped for driving

5

without the required identification on the truck. Norwood stated that he thought he might get stopped.

At 5:27 p.m., while the men were still waiting for backup, Norwood and Miller walked to the cab to allow Norwood to get a cigarette. The conversation at the cab cannot be heard on the recording because the men were too far away from Miller's vehicle. According to Miller's testimony, Norwood asked Miller if he wanted to search there while the two men were in the cab getting the cigarettes. Miller said no, he would wait for the back-up. Transcript, at 21.

Illinois State Police Sergeant Terry Carter arrived at the scene at approximately 5:30 p.m. At 5:32 p.m., Miller began searching Norwood's trailer. Carter stood with Norwood between the two vehicles during the search. At 5:36 p.m., Trooper Steven Cody arrived and assisted Miller with the search of the trailer. They found no contraband in the trailer. They then searched the cab and sleeper compartment (collectively "cab"). They found three duffle bags of marijuana in the sleeper compartment. During this search of the cab, Norwood sat on the front of the hood of Miller's vehicle while Carter stood nearby. They had a brief conversation, but the camera did not record their comments. Norwood testified that he told

6

Carter that Miller and Cody did not have consent to search the cab. Transcript, at 71. Carter denies that Norwood ever made any such statement. Id., at 57, 88-89. Carter and Miller both testified that Norwood never withdrew or limited the scope of his consent. Id., at 24-26, 57.

During the search of the cab, Miller and Cody found three duffle bags full of marijuana. At 5:44 p.m., Miller arrested Norwood. Miller advised Norwood of his rights under Miranda and then asked why he consented to the search. Norwood responded that Miller would have searched even without his consent. Id., at 24-26.

## ANALYSIS

Judge Cudmore determined that this was a valid traffic stop followed by a valid, consensual search. The Court agrees. Miller had probable cause to stop Norwood for the traffic violation of following too closely. Norwood argues that the traffic slowed down because two state police cars were parked in the median about one-quarter to one-half mile apart. Letter from Larry Norwood filed January 25, 2007 (d/e 31), at 2. The presence of police cars is not a justification for following too closely; Norwood should be in sufficient control of his vehicle to maintain a safe following distance. Norwood also argues that Miller pulled into the left lane, effectively

7

hemming him in and forcing him to follow too closely.  Id.  Miller, however, observed Norwood following too closely before he pulled out of the median.  Miller, thus, did not cause the violation.  Miller made a valid traffic stop for following too closely.

Norwood also argues that Miller was wrong in claiming that his truck was not marked properly.  The photographs submitted show no markings on the hood or door of the cab, but show markings on the sleeper compartment.  Norwood presents no evidence to authenticate the photographs and to establish that the markings were on the truck on April 24, 2006.  His comments on the recording are also inconsistent with this claim.  He explained the lack of identification by stating that the truck just came out of the body shop, and he stated that he expected to be stopped for lack of identification.  Even if the Court ignores the deficiencies in the foundational evidence and the inconsistencies in Norwood's recorded statements, the photographs still show no markings on either the cab door or the cab hood.  It is, thus, understandable why Miller might have believed the truck was not properly marked.  Regardless, Miller made a valid stop for the moving violation of following too closely.

Norwood also argues that the stop was a pretext to search.  The

Supreme Court has determined that the officer's motives are irrelevant as long as he had a valid basis to make the stop. Whren v. United States, 517 U.S. 806, 813 (1996). The cases relied on by Norwood that are based on improper officer motive are not persuasive in light of the Supreme Court's decision in Whren. Here, Miller had probable cause to stop Norwood for a traffic violation. Miller's other possible motives are irrelevant.

Norwood also complains about the propriety of the inspection performed by Miller. The Court does not need to consider these arguments because Miller had probable cause to stop Norwood for the traffic violation. Because Miller had a valid reason to stop Norwood, the issue of whether Miller followed proper procedures for the inspection is irrelevant. The stop was valid.

The scope of the stop was also reasonable under the circumstances. Miller did not detain Norwood for an unreasonable length of time. Miller properly detained Norwood briefly to conduct a criminal background check. After getting the results of that check, Miller asked for consent to search, and Norwood gave his consent. Norwood consented to the search only eleven minutes after the stop began. After Norwood's consent, Miller was just waiting for backup to conduct the search.

Norwood's consent was also valid. An individual's consent to search must be knowing and voluntary. The validity of such consent is judged by the totality of the circumstances. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973). In this case, the video records the two men engaged in a calm, polite conversation while sitting in Miller's vehicle. Norwood stated that he had thirty years experience as a truck driver. He also had experience with law enforcement and the criminal justice system. During their conversation, Miller politely asked for permission to search and Norwood consented. There is nothing unusual or remarkable to call into question whether the consent was knowing and voluntary. Norwood appeared lethargic because of his diabetes, but there is nothing on the tape that indicates that the diabetes affected his ability to make a decision to consent to the search. Norwood also cites authority in his correspondence with the Court to support his argument that the consent was not voluntary. <u>See Letter from Larry Norwood filed January 24, 2007 (d/e 33)</u>, at 19 of 26, and cases cited therein. These cases are distinguishable because they do not address the totality of the circumstances present in this case. In this case, nothing indicates that the consent was invalid.

Norwood also argues that the scope of his consent to search was

limited to the trailer. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness --what would the typical reasonable person have understood by the exchange between the officer and the suspect?" <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991). In this case, the exchange between Miller and Norwood indicates that the cab was included in the scope of the search. First, Norwood volunteered to Miller the fact that he did not have any bedding. Norwood had no need to do that if he did not consent to a search of the cab. Further, when Norwood and Miller went to the cab for a cigarette, Norwood asked Miller if he wanted to search at that point. Again, he had no reason to ask if he did not consent to a search of the cab. These facts would have convinced a typical reasonable person that the parties both contemplated a search of the entire vehicle, including the cab.

Norwood also claims that, even if he gave his consent, he withdrew his consent to search the cab. He claims that he told Sergeant Carter that they did not have consent to search the cab. A person may withdraw consent. <u>United States v. Jachimko</u>, 19 F.3d 296, 299 (7th Cir. 1994). Sergeant Carter contradicts Norwood's claim that he withdrew his consent. The Court has reviewed the transcript of the proceedings before Judge Cudmore,

the video and other evidence submitted by all parties, and finds that Norwood's claim that he limited the scope of his consent to not credible. The video shows Norwood sitting calmly while the search progressed. This behavior is not consistent with his claim that he told the officers that he did not consent to the search of the cab. The Court holds that the search of the cab was a valid, consensual search.

Because the stop was valid and the search was consensual, there is no basis to exclude the marijuana found during the search.

THEREFORE, Norwood's objections are OVERRULED. The Court again adopts the Report and Recommendation (d/e 14) and denies the Motion to Suppress Evidence (d/e 10).

IT IS THEREFORE SO ORDERED.

ENTER:  February 20, 2007.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE